1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8 | KATHERINE KING, Personal
Representative of the Estate of LMK, a
minor,

9 |                    Plaintiff,

10 | KENNETH KING,

11 |                    Plaintiff – Intervenor,

12 | v.

13 | UNITED STATES OF AMERICA, and
DOYON SECURITY SERVICES, LLC,

14

15 |                    Defendants.

CASE NO. C11-5355 BHS

ORDER DENYING PLAINTIFF'S
MOTION TO CLARIFY
PLEADINGS OR LEAVE TO
AMEND, GRANTING
PLAINTIFF–INTERVENOR AND
DEFENDANT DOYON'S
MOTIONS FOR SUMMARY
JUDGMENT, DENYING THE
GOVERNMENT'S MOTION FOR
SUMMARY JUDGMENT, AND
GRANTING MOTION TO
SUPPLEMENT MOTION

16

17

18

19

20

21

22

This matter comes before the Court on Plaintiff Katherine King's ("Ms. King"),

Personal Representative of the Estate of LMK ("Estate"), final motion to clarify

pleadings or file a second amended complaint (Dkt. 61), Defendant United States of

America's ("Government") motion for summary judgment (Dkt. 69), Defendant Doyon

Security Services, LLC's ("Doyon") motions for summary judgment (Dkts. 74 & 77),

and Plaintiff–Intervenor Kenneth King's ("Mr. King") motion for partial summary

judgment (Dkt. 80).  The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants and denies the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 6, 2011, the Estate filed a complaint against the Government and Doyon (collectively "Defendants") alleging negligence, wrongful death pursuant to RCW 4.20.010, pain and suffering, economic loss, and funeral and burial expenses.  Dkt. 2 (redacted version).  All of the causes of action were based on the death of LMK.  *Id.*

On November 15, 2011, Mr. King filed a motion to intervene.  Dkt. 26.  On December 2, 2012, the Court granted the motion in part and denied the motion in part.  Dkt. 35.  On December 19, 2012, Mr. King filed an intervenor complaint alleging negligence and an action for injury of death of a child pursuant to RCW 4.24.010.  Dkt. 36.

On January 12, 2012, the Government filed a motion to dismiss Mr. King's complaint because he had failed to timely file an administrative claim.  Dkt. 40.  On February 28, 2012, the Court granted the motion and dismissed Mr. King's claims against the Government.  Dkt. 46.

On May 31, 2012, Mr. King's counsel filed a motion to substitute Christine King ("Mrs. King") as Plaintiff–Intervenor because Mr. King had passed away.  Dkt. 51.  On July 19, 2012, the Court granted the motion.  Dkt. 83.

1    On July 3, 2012, the Estate filed a final motion to clarify pleadings or to file a

2    second amended complaint.  Dkt. 61.  On July 16, 2012, the Government responded (Dkt.

3    65) and Doyon responded (Dkt. 67).  On July 20, 2012, the Estate replied.  Dkt. 84.

4         On July 16, 2012, the Government filed a motion for summary judgment (Dkt.

5    69), Doyon filed two motions for summary judgment (Dkts. 74 & 77), and Mrs. King

6    filed a motion for partial summary judgment (Dkt. 89).  On August 6, 2012, the parties

7    responded.  Dkts. 85, 89, & 92.  On August 10, 2012, the parties replied.  Dkts. 97, 99,

8    101, & 103.

9         On August 14, 2012, the Government filed a motion to supplement its motion with

10   additional authority.  Dkt. 106.  On August 15, 2012, the Estate responded.  Dkt. 107.  On

11   August 23, 2012, the Government replied.  Dkt. 108.  The Court grants the motion and

12   has considered the opinion of the Honorable Ronald B. Leighton.

13                        **II. FACTUAL BACKGROUND**

14        The facts of this case involve the tragic death of a minor by an overdose of illegal

15   drugs.  On February 14, 2009, Pvt. Timothy Bennitt drove LMK and her friend TY to

16   Joint Base Lewis McCord ("JBLM").  They initially attempted to enter JBLM through

17   the North Gate, but Doyon employee Ralph Mingus refused them access because he

18   thought that LMK and TY were under 16 years of age.  Dkt. 76, Declaration of Sok-

19   Khieng K. Lim, Exh. 11, Deposition of Ralph Mingus.  The group then went to the main

20   gate of JBLM where a Doyon employee allowed them to enter at 11:19 P.M.

21

22

ORDER - 3

JBLM imposed a juvenile curfew that denied access to children aged 15 and under after 11:00 PM and for children aged 16 and 17 after 1:00 AM.  JBLM access procedures were as follows:

> a.      When escorted by an authorized ID Cardholder . . . a visitor is not required to present any form of identification unless deemed warranted by security personnel. When requested by security personnel to present identification, escorted guests must present identification as listed in sub-paragraph b.
> b.      When not escorted by an authorized ID Cardholder a visitor must have a federal, state, or school form of photo ID; and a stated valid reason to access the installation.

FL Regulation No. 190-16.

After gaining entry to the base, the group proceeded to Pvt. Bennitt's barrack.  The barrack's policy prohibited non-family member minors from being in the barracks without a parent or guardian.  Dkt. 71, Declaration of Christine Cleary at 3.  Visitors of age could visit from 8:00AM to 2:00AM and overnight stays are prohibited.  *Id.* There was one entry point where visitors were instructed to register with the Charge of Quarters ("CQ") or his assistant known as the "CQ runner."  There were also other entrances where anyone could enter the barracks without registering.  The CQ and CQ Runner were charged with the care of the barracks and part of their job was to inspect the barracks every couple of hours and ensure that the rules (including registration of visitors) were followed.  *Id.*

On the night in question, Pvt. Bennitt and LMK entered the barrack without signing in LMK as a visitor.  Sometime around midnight, Pvt. Bennitt texted the CQ runner on duty, Sgt. Robert Herlick, and informed Sgt. Herlick that LMK was in Pvt.

1   Bennitt's room.  Dkt. 86, Steven R. Pruzan, Exh. 8 at 32–33 (deposition pagination).

2   Sometime before 3:00AM, LMK snorted a combination of Xanax and Opana, fell asleep,

3   and passed away.

### III. DISCUSSION

5   **A.     Motion to Amend**

6          The Estate moves to either clarify its complaint or to file an amended complaint.

7   Dkt. 62.  With regard to the former, a complaint must contain "a short and plain

8   statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P.

9   8.  In this case, the Estate not only stated that it was bringing the "claim in [Ms. King's]

10  representative capacity" (Dkt. 2, ¶ 3), but also stated that it was bringing the wrongful

11  death claim "[p]ursuant to RCW 4.20.010 . . . ." (*Id*. ¶ 7).  The complaint is clear and

12  does not contain a statement that any party was bringing an individual claim pursuant to

13  RCW 4.24.010.  Although the Court must liberally construe a complaint, there is no

14  precedent for either the Court or the opposing party to completely misread a complaint.

15  Therefore, the Court denies the Estate's motion to clarify the complaint to include an

16  individual claim.

17         With regard to leave to amend, the Estate argues that leave to amend should be

18  freely given pursuant to Fed. R. Civ. P. 15(a)(2).  Dkt. 62 at 12.  The Estate, however,

19  must first show "good cause" for failure to comply with the Court's scheduling order.

20  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–608 (9th Cir. 1992) (Once the

21  district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil

22  Procedure 16 which established a timetable for amending pleadings that rule's standards

1    controlled.).  On this point, "Rule 16(b)' s 'good cause' standard primarily considers the

2    diligence of the party seeking the amendment."  *Id.* at 609.  "If that party was not

3    diligent, the inquiry should end."  *Id.*

4         In this case, the Estate has failed to show any diligence in seeking leave to amend.

5    On February 28, 2012, the Court dismissed Mr. King's claims against the Government

6    and stated that "the only claimant in this action is Ms. King as the personal representative

7    of the estate of LMK and there is no parental claim to be joined."  Dkt. 46 at 4.  Instead

8    of moving to clarify the complaint then or shortly thereafter, the Estate waited until

9    discovery had closed and dispositive motions were almost due to file the motion to clarify

10   or amend.  This is not diligent conduct.  Therefore, the Court denies the Estate's motion

11   for leave to amend the complaint.

12   **B.     Summary Judgment**

13        The parties have filed four motions for summary judgment.  Defendants move for

14   summary judgment against the Estate, Doyon moves for summary judgment against Mrs.

15   King, and Mrs. King moves for summary judgment on the issue of Mr. King's paternity.

16        **1.     Standard**

17        Summary judgment is proper only if the pleadings, the discovery and disclosure

18   materials on file, and any affidavits show that there is no genuine issue as to any material

19   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

20   The moving party is entitled to judgment as a matter of law when the nonmoving party

21   fails to make a sufficient showing on an essential element of a claim in the case on which

22   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

1      **2.    Mrs. King's Motion**

2      Mrs. King "requests that the Court issue an order on summary judgment

3 establishing Kenneth King's paternity of LMK."  Dkt. 80 at 2.  This Court does not have

4 jurisdiction to determine paternity.  Washington statutes, however, create a rebuttable

5 presumption that a person is the parent if the child is born during marriage.  RCW

6 26.26.116(1)(a).  "A presumption of parentage established under this section may be

7 rebutted only by an adjudication under RCW 26.26.500 through 26.26.630."  RCW

8 26.26.116(3).

9      In this case, Mrs. King has shown that the Court must presume that Mr. King was

10 a parent of LMK.  Mrs. King has submitted evidence that Mr. King was married to Ms.

11 King when LMK was born.  The marriage creates a rebuttable presumption that may not

12 be rebutted in this proceeding.  Therefore, the Court grants Mrs. King's motion and, for

13 this proceeding only, holds that Mr. King shall be considered a parent of LMK.

14      **3.    Mrs. King's Claims**

15      Doyon moves to dismiss Mrs. King's wrongful death claim because (1) LMK's

16 intoxication is a complete defense, (2) Doyon did not breach a duty owed to LMK, (3)

17 LMK was the proximate cause of her own death, and (4) Mrs. King fails to establish a

18 claim under RCW 4.24.010.  Dkt. 77 at 12–22.

19      **a.    LMK's Intoxication**

20      Doyon asserts that evidence of LMK's intoxication is a complete defense to Mrs.

21 King's claims.  Washington law provides as follows:

22

> [I]t is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death **and the trier of fact finds** such person to have been more than fifty percent at fault.

RCW 5.40.060(1) (emphasis added).

In this case, Doyon appears to argue that it is entitled to this defense because LMK died of a drug overdose.  Dkt. 77 at 13.  Doyon dropped this argument after Mrs. King pointed out that "whether LMK was fifty percent or more at fault is clearly something that the trier of fact will have to decide."  Dkt. 92 at 13.  The Court agrees with Mr. King. Therefore, the Court denies Doyon's motion on this issue.

### b.    Duty and Proximate Cause

To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury.  *Parrilla v. King County*, 138 Wn. App. 427, 432 (2007).

In this case, Doyon argues that it did not owe LMK any duty beyond the regulations it was contracted to enforce.  Specifically, Doyon states that

> FL Regulation No. 190-16, dated June 20, 2005, and as supplemented by Guard Orders and ACP Procedures, establish that in order to gain access onto the Fort Lewis Military Base on February 14, 2009, LMK, as a visitor, was only required to be sponsored by a holder of an authorized ID (Pvt. Timothy Bennitt), be at least 16 years of age (LMK was 16 years old–her date of birth January 2, 1993), and be in possession of some form of identification (school form of photo ID from Lakes High School).

1   Dkt. 77 at 14.  Mrs. King cannot overcome the simple fact that Doyon enforced the

2   regulation that it was contracted to enforce.  Mrs. King uses a fair amount of legal

3   keywords such as "foreseeable outcome," special relationship," and that the base was an

4   "attractive nuisance."  *See* Dkt. 92 at 17–22.  None of these arguments have merit.

5   Therefore, the Court grants Doyon's motion for summary judgment on the issues of duty

6   and proximate cause.

7          **4.     The Estate's Claims**

8          Both Doyon and the Government move for summary judgment on the Estate's

9   claims.  The Court will address each motion separately.

10              **a.     Doyon**

11         Doyon moves for summary judgment on The Estate's claims on mostly the same

12  grounds as it did on Mrs. King's claims.  The Estate, however, counters with different

13  arguments regarding a duty of care.  The Estate has submitted the declaration of Dr.

14  William T. Gaut, a "consultant and expert in the fields of criminal justice and

15  private/proprietary security . . . ."  Dkt. 87, ¶ 1.  However, whether a legal duty exists is a

16  question of law for the court.  *Pedroza v. Bryant*, 101 Wn.2d 226, 228 (1984).  Nothing

17  in Dr. Gaut's declaration changes the conclusion that, pursuant to FL Regulation No.

18  190-16, LMK entered the base with an authorized person at an authorized time at an

19  authorized age.   Therefore, the Court grants Doyon's motion for summary judgment on

20  the Estate's claims.

21

22

1          **b.**    **The Government**

2        The Government moves for summary judgment on the Estate's claims because the

3 Estate cannot establish duty or proximate cause. Dkt. 69 at 4–12. The Government's

4 proximate cause argument is based on RCW 5.40.060, which requires a finding by the

5 trier of fact. *See supra*. Therefore, the Court denies the Government's motion on the

6 issue of proximate cause.

7        With regard to duty, the Government argues that the Estate "cannot establish a

8 duty of care owed to LMK." Dkt. 69 at 6. It is undisputed that Sgt. Herlick knew that

9 LMK was a visitor and had not properly signed in. Thus, Sgt. Herlick was responsible

10 for ensuring that LMK signed in and did not stay overnight in the barrack. In

11 Washington, "a person who chooses to assist another, even gratuitously, inducing

12 reliance on that assistance, may be liable for failure to exercise reasonable care." *Doe v.*

13 *Gonzaga University*, 99 Wn.App. 338, 352 (2000), *aff'd in part, rev'd in part*, 143 Wn.2d

14 687, 704-05 (2001) (affirming no voluntary duty assumed), *rev'd and remanded on other*

15 *grounds*, 536 U.S. 273 (2002). JBLM issued barrack visitor policies and voluntarily

16 chose to assume a standard of reasonable care to regulate and, in some cases, prevent

17 visitors to the barracks. Sgt. Herlick was responsible for enforcing these policies and the

18 Estate provides evidence that he failed to do so.

19        With regard to the other issues of negligence, the Court recognizes that the Estate

20 will have difficulties proving the elements of reliance and foreseeability. These issues,

21 however, are questions of fact for trial. *See Bolser v. Clark*, 110 Wn. App. 895, 903

22 (2002) (reliance is a question of fact unless reasonable minds could reach but one

1   conclusion); *McLeod v. Grant Cy. Sch. Dist. 128*, 42 Wn.2d 316, 323 (1953)

2   (foreseeability is a question of fact for a jury unless the circumstances of the injury are so

3   highly extraordinary or improbable as to be wholly beyond the range of expectability).

4   Based on the current record, the Court is unable to conclude that reasonable minds could

5   reach but one conclusion or that the injury was highly extraordinary or improbable.

6   Therefore, the Court denies the Government's motion for summary judgment on the

7   Estate's claims.

## IV. ORDER

9       Therefore, it is hereby

10      **ORDERED** that the Estate's final motion to clarify pleadings or file a second

11  amended complaint (Dkt. 61) is **DENIED**; Doyon and Mrs. King's motions for summary

12  judgment (Dkts. 74, 77, & 80) are **GRANTED**; the Government's motion for summary

13  judgment (Dkt. 69) is **DENIED**; and the Government's motion to supplement its motion

14  (Dkt. 106) is **GRANTED**.

15      Dated this 28th day of August, 2011.

16

17

18      BENJAMIN H. SETTLE
        United States District Judge

19

20

21

22